NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 16, 2008
Decided February 12, 2009

**Before**

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-2264

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of |
| | Indiana, South Bend Division. |
| *v.* | |
| | No. 3:07-CR-00111(02)RM |
| BRANDON L. TAYLOR, | |
| *Defendant-Appellant*. | Robert L. Miller, Jr., |
| | *Chief Judge*. |

**ORDER**

Brandon Taylor was tried before a jury on four counts of possessing guns and ammunition and two counts of carjacking. On the second day of the two-day trial, the carjacking counts were dismissed on the government's motion. Later that day, the jury found Taylor guilty of the gun and ammunition offenses. At sentencing the district court determined by a preponderance of the evidence that Taylor had, in fact, committed the carjacking offense, and so it applied a cross-reference provision in the firearm-possession guideline to sentence Taylor using the robbery guideline. The

district court then went above the recommended range of 188 to 235 months' imprisonment and sentenced Taylor to 240 months—half the statutory maximum. Taylor objects to using the robbery guideline at sentencing because the carjacking charges were not proven to a jury beyond a reasonable doubt.

Taylor and a friend, Ernest Glasper, each had a gun and were driving around smoking marijuana in a Nissan accompanied by two teenagers. Taylor had also taken ecstasy earlier that day. The four called Dion Winston to get more marijuana, and when Winston drove up, Glasper and Taylor each pointed a gun at his head and ordered him out of the car. Then Glasper hit Winston in the back of the head with his gun. Winston, his head bleeding, fell to the ground, and Glasper drove off in Winston's car with the Nissan following behind. Winston called the police to report the crime and later picked Taylor and Glasper out of a lineup.

Meanwhile, Glasper ditched Winston's car and rejoined the others. They switched cars and became embroiled in a second incident involving a shootout.

Taylor, Glasper, and the two teenagers switched back to the Nissan and went to a Wal-Mart store in South Bend, Indiana, to get more ammunition. There, a South Bend police officer recognized Taylor as a suspect in the earlier shooting. He followed Taylor and his companions when they drove away. The officer radioed for help, and when the police attempted to stop the car, it sped away, and a high-speed chase ensued through a construction zone and onto the lawns of several houses. During the chase, a bag was thrown out of the Nissan's passenger window. Police later recovered the bag and discovered a .45 handgun, a .380 handgun, and a box of .45 caliber ammunition. Soon the car crashed, and the four occupants fled on foot. The police gave chase and caught them. Police found two live .45 caliber rounds and a little over 7 grams of marijuana in the Nissan.

Several incidents occurred during Taylor's trial that affected his sentence. First, Taylor repeatedly threatened Sergeant Jennifer Koczan, a St. Joseph County Jail official who had authenticated a picture of the line-up room at trial. He said, for example, "When I see you, you gonna get yours, what goes around comes around you dirty bitch." He also warned that he would shoot her if he saw her on the street and threatened to put a $5,000 bounty out on her. Also, Taylor regularly threatened to kill and put hits on the five-person team assigned to move him from the jail to the courtroom and back.

At the jail when the trial ended, Taylor punched a U.S. Marshal and a Sheriff's Deputy who were removing his handcuffs. Others came to help, but Taylor continued to resist violently, ultimately injuring three guards.

The PSR sentencing recommendation began with U.S.S.G. § 2K2.1, the guideline for unlawful possession of a firearm or ammunition, but then recommended applying a cross-reference in § 2K2.1(c)(1)(A). Subsection (c)(1)(A) instructs courts that if "the defendant used or possessed any firearm or ammunition in connection with the commission . . . of another offense" to use the guideline for the other offense if the resulting offense level is higher than the offense level for firearm possession.[1] The cross-reference here led to the robbery guideline at § 2B3.1 because Taylor used the gun and ammunition in connection with the carjacking.

Taylor objected to using the cross-reference and argued that the court should instead account for the carjacking through U.S.S.G. § 2K2.1(b)(6), which instructs sentencing judges to increase the firearm offense level by four if the firearm is possessed in connection with another felony. The difference is significant because if the district court had applied only the firearm guideline, the offense level would have been 18, but under the robbery guideline the offense level was 30. The court held that the guidelines mandated it to use the higher offense level, and so it sentenced Taylor using the robbery guideline. *See* U.S.S.G. § 2K2.1(c)(1)(A). The court then increased the offense level by two after determining that Taylor's threats to Sgt. Koczan were an attempt to obstruct justice under § 3C1.1.

Taylor's twelve criminal history points placed him in criminal history category V, resulting in a guidelines range of 188 to 235 months. After considering the 18 U.S.C. § 3553(a) factors, the district court imposed a 240-month sentence, which was above the guideline range, but half the maximum (10 years x 4) of 480 months.

When determining that the guidelines range was insufficient, the court first found in mitigation that the guidelines range did not reflect that the carjacking charges were dismissed, but then turned its attention to factors aggravating Taylor's offense. The court explained that the circumstances of Taylor's crime were more serious than the usual felon or drug user in possession of a gun and that Taylor's prior felony—a

---

[1] The cross-reference directs the court to § 2X1.1, conspiracies, attempts, and solicitations, which in turn directs the court to the guideline for the substantive offense, in this case, robbery, § 2B3.1.

carjacking followed by a high-speed flight from police—was uncomfortably similar to his current offense. The court further recognized that although the guidelines range adequately took into account the carjacking, they did not adequately reflect that he committed the crime while taking ecstasy and marijuana or that he got into a shootout. Finally, the court pointed out that the guidelines range did not reflect the unprovoked attack on jail officials or the threats he made to officers besides Sgt. Koczan. The district court concluded that there was a "much, much greater than usual need for the sentence to protect the public from further crimes by" Taylor, and so it imposed a heavy term of imprisonment.

Taylor initially argues that the district court violated his Sixth Amendment right to trial by jury by relying on conduct underlying charges that were dismissed during trial. He acknowledges that current precedent undercuts his argument, but believes that, after the decisions in *United States v. Gall*, 128 S. Ct. 586 (2007) (requiring appellate courts to review outside-guidelines sentences for abuse of discretion), *Kimbrough v. United States*, 128 S. Ct. 558 (2007) (allowing district courts discretion under *Booker* to disregard the 100-to-one ratio for crack vs. powder cocaine sentences), and *Cunningham v. California*, 549 U.S. 270 (2007) (invalidating California's determinate sentencing law under the Sixth Amendment because it required a statutory maximum to be increased based on facts found by the judge by a preponderance of the evidence, instead of by the jury beyond a reasonable doubt), the Supreme Court may be prepared to revisit *United States v. Watts*, 519 U.S. 148 (1997) (per curiam), which held that a court can use acquitted conduct during sentencing if the conduct is proved by a preponderance of the evidence.

Taylor does not really develop the argument in his main brief, and the government correctly points out that *United States v. Price*, 418 F.3d 771, 788 (7th Cir. 2005), held that *Watts* is still the law after *Booker*. We see no reason here to revisit the use of acquitted or dismissed conduct at sentencing. *See United States v. White*, No. 05-6596 (6th Cir. Dec. 24, 2008) (en banc) (reaffirming continued validity of *Watts* and use of acquitted conduct at sentencing); *see also United States v. Thompson*, 523 F.3d 806, 809 (7th Cir. 2008) (upholding sentence of 190 years' imprisonment based on cross-reference for uncharged murder—that of defendant's own mother—after he was convicted of wire fraud, use of fire to commit felony, bankruptcy fraud, and money laundering).

In his reply brief, however, Taylor refines his argument. According to him the *way* the court used the dismissed conduct violated his Sixth Amendment rights. Taylor maintains that the district court should have accounted for the carjacking by increasing

the firearm offense level under U.S.S.G. § 2K2.1(b)(6), but that by applying the cross-reference and using the robbery guideline the district court "sentenced Mr. Taylor as if he was [sic] found guilty, beyond a reasonable doubt, of carjacking."

In his opening brief, Taylor primarily relies on Justice Scalia's concurrence in *Gall*:

> [T]he Court has not foreclosed as-applied constitutional challenges to sentences. The door therefore remains open for a defendant to demonstrate that his sentence, whether inside or outside the advisory Guidelines range, would not have been upheld but for the existence of a fact found by the sentencing judge and not by the jury.

*Gall*, 128 S. Ct. at 602-03 (Scalia, J., concurring). Taylor bolsters his argument in his reply brief with *United States v. Horne*, 474 F.3d 1004 (7th Cir. 2007), which upheld using acquitted conduct at sentencing—but in dicta warned, "[t]his is not a case in which a jury convicts a defendant of one very minor crime and acquits him of the serious crimes with which he was charged, and the judge then bases the sentence almost entirely on those crimes." *Id.* at 1006-07.

Taylor argues that his is such a case: he was convicted of unlawful possession of a gun and ammunition but sentenced based on the more serious carjacking charges. *Horne*, however, forecloses Taylor's argument by acknowledging that the district court retains discretion to sentence outside a guidelines range when the court believes that it would not promote respect for the law to do otherwise. *Horne*, 474 F.3d at 1007; *see also United States v. Reuter*, 463 F.3d 792 (7th Cir. 2006).

In this case, the district court looked at the § 3553(a) factors and decided that a within-range sentence did not adequately reflect the aggravating aspects of the crime, Taylor's behavior at the jail during the trial, or the extraordinary need to protect the public from Taylor. Given the district court's reasons for imposing a sentence above the recommended range, Taylor cannot say that "his sentence . . . would not have been upheld but for" the district court's finding that he committed carjacking. *Gall*, 128 S. Ct. at 602-03 (Scalia, J., concurring).

For these reasons, the judgment of the district court is AFFIRMED.