In the

# United States Court of Appeals
### For the Seventh Circuit

_____

No. 06-2423

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ABOSEDE ABDULAHI,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03-CR-708—**Ronald A. Guzman**, *Judge.*

_____

ARGUED FEBRUARY 29, 2008—DECIDED APRIL 23, 2008

_____

Before POSNER, ROVNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Abosede Abdulahi pleaded guilty (without a plea agreement) to a charge of conspiracy to possess with intent to distribute a controlled substance. *See* 21 U.S.C. §§ 846, 841(a)(1). Although drug quantity is not an element of the charged crime, the indictment alleged that Abdulahi's offense involved "in excess of 100 grams of mixtures containing heroin." When Abdulahi learned that the government intended to seek a sentence based on 17 kilograms of heroin, she moved to withdraw her guilty plea, but the district court denied her motion. At sentencing, the court used a drug quantity of 17 kilograms

to calculate Abdulahi's range of 188 to 235 months under the sentencing guidelines. A sentence of 188 months was imposed. On appeal, Abdulahi has forsworn her desire to withdraw her guilty plea. Instead, she challenges her sentence as unconstitutional and unreasonable because it was based on an amount of heroin much greater than that alluded to in the indictment. We have rejected challenges like Abdulahi's before, and we do so again here.

Before her troubles with law enforcement, Abdulahi apparently controlled a significant portion of the Chicago-area heroin market. Alas, things started to go sour when a confidential informant gave the DEA the name of a heroin dealer a few links down the chain from Abdulahi. After his arrest, the dealer pointed the finger at another dealer who, in turn, pointed his finger at Abdulahi, telling agents that she was the ringleader. Agents subsequently arrested Abdulahi and searched the apartment that she and her associates were using as a base for their operation. They found assorted drug paraphernalia, $14,500 in cash, 583 grams of heroin, and a ledger that recorded drug sales to more than a dozen different buyers.[1] For her part, Abdulahi claimed that she was not the leader of a heroin ring. She said she fled her native Nigeria for the United States when she discovered that her husband was a major drug dealer there. Abdulahi claimed that she only got involved in drug dealing here

---

[1] Lest the term "ledger" suggest the sort of fancy hardbound books used by green-visored accountants in the old days, we note that the "ledger" in question here was nothing more than a 70-sheet, wide-ruled, spiral-bound notebook, the type elementary school students stock up on each fall at back-to-school sales.

because her associates in the drug ring threatened that if she did not assist them, they would harm her children who remained in Nigeria.

Abdulahi's indictment alleged that her crime involved "in excess of 100 grams of mixtures containing heroin." Although other members of the drug ring cooperated with the government, Abdulahi refused, claiming that she feared for the safety of her family in Nigeria if her husband found out that she was cooperating. She chose not to go to trial, however, and, as we said, pleaded guilty to the charge against her without a plea agreement.

At her change of plea hearing, the district judge engaged in the colloquy required by Federal Rule of Criminal Procedure 11. Relevant to our purposes, he made sure that Abdulahi was aware of the maximum sentence that could be imposed—40 years. *See* Fed. R. Crim. P. 11(b)(1)(H); 21 U.S.C. § 841(b)(1)(A). The judge explained that, while the statutory minimum was 5 years, he would not determine the guidelines range until later, and Abdulahi told the judge that her lawyer had talked to her about the guidelines. The government stated the factual basis for the plea, pinning responsibility on Abdulahi for 988 grams of heroin, and Abdulahi admitted that the facts presented were true.

After Abdulahi pleaded guilty, a probation officer prepared a presentence report that reflected the government's intent to seek a sentence based on 17 kilograms of heroin. That figure was computed from entries in the ledger that was found when Abdulahi's apartment was searched. After she learned that the government intended to seek a sentence based on such a high drug quantity, Abdulahi sought to withdraw her guilty plea. But after a thorough hearing, at which Abdulahi was represented

by new counsel, her request was denied. We need not consider the arguments that the district judge rejected because, on appeal, Abdulahi has renounced her attempt to withdraw the plea.

At sentencing, Abdulahi argued against the drug quantity and against an enhancement for being a manager of an enterprise. *See* U.S.S.G. § 3B1.1. The government presented the testimony of another member of the drug ring, plea agreements of two other members, and an FBI analysis of the drug ledger. Fingerprints, a palm print, and handwriting analysis linked the ledger to Abdulahi. Abdulahi argued that the other members of the heroin ring were not credible and that the analysis of the drug ledger was not reliable, but the district judge disagreed. Crediting the testimony and plea agreements, he found that Abdulahi was a manager of the drug ring and that she was responsible for more than 17 kilograms of heroin. This yielded a base offense level of 36, U.S.S.G. § 2D1.1(c)(2), to which 3 points were added for being a manager, *id.* § 3B1.1(b), and 3 points were subtracted for her acceptance of responsibility, *id.* § 3E1.1. Combined with Abdulahi's lack of any criminal history, the district court calculated a guidelines range of 188 to 235 months and imposed the lowest within-guidelines sentence of 188 months.

On appeal, Abdulahi argues that the district court should not have sentenced her based on such a high drug quantity because, she insists, the amount specified in the indictment constrains the district court at sentencing. In a general sense, this proposition is correct, but it does not help Abdulahi. After *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any fact that increases the *statutory* maximum sentence must be proven to a jury beyond a reasonable doubt or admitted by the defendant. *Id.* at 490; *United States*

*v. Brough*, 243 F.3d 1078, 1079 (7th Cir. 2001). But when a judge imposes a sentence below the statutory maximum, he may do so based on facts found by a preponderance of the evidence. *Id.* at 1079-80. As we have repeatedly explained, *Apprendi* has no application to cases like this one where the sentence is below the statutory maximum. *See United States v. Hernandez*, 330 F.3d 964, 980-81 & n.11 (7th Cir. 2003) (collecting cases).

In addition to vainly invoking *Apprendi*, Abdulahi points to two other sources, the Fifth Amendment's Due Process and Indictment Clauses, for her argument that the drug quantity at sentencing should have been capped by the amount specified in the indictment. But her argument cannot succeed unless drug quantity is an element of the charged offense, and it is not. *United States v. Henry*, 408 F.3d 930, 934 (7th Cir. 2005). An indictment must fairly inform a defendant of the charge against her, *United States v. Resendiz-Ponce*, 127 S. Ct. 782, 788 (2007), and under the Due Process Clause she cannot be convicted of an offense "without notice and a meaningful opportunity to defend," *Jackson v. Virginia*, 443 U.S. 307, 314 (1979). But these requirements apply to conviction and not to sentencing. Neither would be offended by the use of a drug quantity at sentencing that is inconsistent with that specified in the indictment (assuming that the sentence is below the statutory maximum, of course). Drug quantity is a sentencing factor, and because it is not necessary to establish a violation of the statute in question, the indictment need not even include it. *See United States v. Peters*, 435 F.3d 746, 752 (7th Cir. 2006).

Even if a drug quantity specified in the indictment did constrain the guidelines calculations at sentencing,

Abdulahi's sentence would not be problematic. She cannot seriously argue that the quantity used here, 17 kilograms, is somehow inconsistent with the indictment's reference to "in excess of 100 grams." Section 841(b)(1)(A) sets the statutory penalty range for 100 grams or more at 5 to 40 years, and section 841(b)(1)(B) sets the penalty range for 1 kilogram or more at 10 years to life. Abdulahi would have us read the latter as putting an upper limit on the former by reading an allegation of 100 grams or more as necessarily not including any quantity above 1 kilogram, but there is no basis for such a reading. The two provisions are clearly meant to overlap: just because the government could have sought a conviction based on a higher drug quantity does not mean that it was required to do so.

Next, Abdulahi argues that her sentence is unreasonable because in great part it is based on uncharged allegations. This is another argument that could not succeed even if drug quantity were an element of the offense because—it hardly needs repeating—17 kilograms *is* "in excess of 100 grams." We only vacate sentences based on uncharged allegations in tail-wagging-the-dog situations where a sentence is based on "relevant conduct" that we do not consider to be truly relevant. *See*, *e.g.*, *United States v. McGowan*, 478 F.3d 800, 802-03 (7th Cir. 2007). But no such conduct is at issue here. Abdulahi pleaded guilty to conspiring to possess with intent to distribute heroin, and she was sentenced properly based on the amount of heroin attributable to the conspiracy. U.S.S.G. § 1B1.3 cmt. 2 (defendant accountable for "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook").

Finally, Abdulahi contends that the evidence supporting the drug quantity finding was not reliable enough.

We review factual findings at sentencing for clear error, *United States v. Stitman*, 472 F.3d 983, 986 (7th Cir. 2007), and we see none here. Evidentiary standards are relaxed at sentencing; a sentencing court may consider information that has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *United States v. Johnson*, 489 F.3d 794, 796-97 (7th Cir. 2007). Abdulahi is correct that a witness testifying on how the government deciphered the drug ledger could have laid a better foundation for the district court's drug quantity finding, but that does not mean the foundation actually laid was insufficient. The FBI agent's report about the ledger explained in adequate detail how he arrived at the 17 kilograms figure, and the district court did not clearly err by relying on it. Statements by other members of the drug ring may have been partly motivated by a desire to place responsibility on Abdulahi, but we have repeatedly held that a district court is not required to disbelieve such evidence. *See*, *e.g.*, *Johnson*, 489 F.3d at 797. The court here did not err when it relied on such statements.

Accordingly, we AFFIRM the judgment of the district court.