NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 16, 2008[1]
Decided July 23, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-4073

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 03 CR 280 |
| ALFRED MCGOWAN, | |
| *Defendant-Appellant.* | James B. Zagel, *Judge.* |

**O R D E R**

This is the second time we've considered Alfred McGowan's case. He first came before us after a jury convicted him on two counts of distributing cocaine. Unbeknownst to McGowan, one of his regular customers, Christine Beu, was working

---

[1] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

with the police.  She helped set up the two controlled buys that formed the basis of his convictions.  The jury also convicted McGowan of conspiracy to distribute cocaine, but he beat that conviction by convincing the district court in a motion for a judgment of acquittal that he had only a buyer-seller relationship with the conspiracy's hub--the cocaine supplier.  Nonetheless, when sentencing McGowan the district court included as relevant conduct the drugs he had purchased from the conspiracy, which had ended eight months before the controlled buys occurred.  McGowan appealed his sentence, arguing that the drugs he purchased should not have been considered.  We agreed and vacated his sentence but placed "no limits" on the factors that could be considered by the district court on remand.  *United States v. McGowan*, 478 F.3d 800, 803 (7th Cir. 2007).  During the first appeal, the government noted that Beu testified at trial to purchasing at least one gram of crack a week from McGowan over a two-year period (totaling 104 grams of crack).  Although the government did not mention the crack sales during the first sentencing hearing and the district court made no finding regarding them, the government argued on appeal that these sales alone could support McGowan's sentence.  When remanding the case, we specifically noted that "more dealings with Ms. Beu can be considered" at resentencing.

Unsurprisingly, at resentencing the government sought to include McGowan's sale of crack to Beu in the relevant conduct calculation.  McGowan objected, arguing that the government waived its right to include these sales by failing to raise them during the first sentencing hearing and that, in any event, Beu's testimony regarding the sales was too unreliable to support a finding that McGowan sold crack.  The district court dismissed McGowan's first argument, pointing to our opinion, which encouraged it to consider these transactions.  The court went on to conclude that Beu credibly testified that she purchased at least 50 grams of crack from McGowan--the threshold needed to put McGowan at an offense level of 30--and sentenced him to 140 months of imprisonment.  Although eight months longer than his original sentence, McGowan did get some breaks at resentencing.  The district court postponed the hearing so that he could benefit from amendments to the guidelines that reduced sentences for crack convictions, and his sentence fell 11 months below his guideline range.

McGowan now appeals his sentence for the second time, reiterating his argument that the government waived its right to raise the crack sales during resentencing.  This issue regarding what exactly was open for argument after our first remand is really an inquiry into the scope of our remand.  *See United States v. Husband*,

312 F.3d 247, 250 (7th Cir. 2002) (concluding that the scope of remand includes waiver issues and "is the relevant inquiry").  Things outside the scope of our remand--either because we finally decided the issue or it didn't come up during the first appeal--are off limits at resentencing, *see id*. at 250-51; *United States v. Swanson*, 483 F.3d 509, 514-15 (7th Cir. 2007), but issues within the scope of our remand can be revisited by the district court *de novo*, *see United States v. White*, 406 F.3d 827, 831-32 (7th Cir. 2005) (noting that the vacation of a sentence results in a "clean slate" for any open issues and allows the district court to "start from scratch" when reevaluating them); *United States v. Polland*, 56 F.3d 776, 777-79 (7th Cir. 1995).  This does not mean that the government can submit new evidence in a belated effort to carry its burden, *United States v. Noble*, 367 F.3d 681, 682 (7th Cir. 2004); *United States v. Wyss*, 147 F.3d 631, 633 (7th Cir. 1998), but it does mean that the district court can take a fresh look at the evidence already before it.

Here, the relevant conduct finding was squarely within the scope of our remand--it was the issue raised by McGowan and the reason we sent the case back.  *See McGowan I*, 478 F.3d at 803; *see also United States v. Buckley*, 251 F.3d 668, 669 (7th Cir. 2001) ("The scope of remand is determined, of course, by the order of remand.").  To reevaluate this finding, the district court was entitled to take a fresh look at the evidence before it, including Beu's testimony regarding the crack sales, which the government, and consequently the district court itself, overlooked during the first sentencing hearing.  *Cf. United States v. Jaimes-Jaimes*, 406 F.3d 845, 847 (7th Cir. 2005) (concluding that argument is forfeited, not waived, when it is not timely asserted).  To dispel any doubt about the propriety of considering this testimony, we explicitly stated that the district court could consider McGowan's transactions with Beu when remanding the case.  *See McGowan I*, 478 F.3d at 803.  The district court did not err by following our instructions.

Turning to the merits of the case, McGowan argues that there is insufficient evidence to support the district court's finding that he sold at least 50 grams of crack to Beu.  This is an uphill battle.  We review the district court's factual findings for clear error and will not disturb them "unless we have a definite and firm conviction that a mistake has been made." *United States v. Samuels*, 521 F.3d 804, 815 (7th Cir. 2008) (citations omitted).  What's more, we pay special deference to a district court's credibility finding "because, unlike our review of transcripts, the district court had the opportunity to listen to the testimony and observe the demeanor of witnesses." *United States v. Thomas*, 512 F.3d 383, 385 (7th Cir. 2008).

The district court concluded that Beu credibly testified regarding the crack sales, and there is nothing in the record that suggests that this finding was clearly erroneous. Although her testimony was brief, it was consistent. Beu, who testified without any type of immunity, had no incentive to inflate the amount of crack she had purchased. And her testimony that she purchased crack, as opposed to a different type of cocaine base, is reliable. After all, "those who smoke, buy, or sell this stuff are the real experts on what is crack." *United States v. Bradley*, 165 F.3d 594; 596 (7th Cir. 1999). What's more, surveillance tapes of McGowan's conversations with his supplier--recorded while he was selling crack to Beu--reveal that McGowan only wanted to purchase cocaine that he could convert to crack. He even requested refunds for cocaine that was too impure to convert. These conversations bolster Beu's testimony that McGowan was in fact dealing crack. Placed on a scale, this evidence may be light, but McGowan identifies nothing to weigh against it, pointing only to absences in the record. True, no crack was recovered from either McGowan or Beu, but that does not make Beu's testimony incredible. Such speculation falls short.

McGowan also asserts that since the district court's finding regarding the crack sales fueled the hefty sentence imposed on him, the court should have made its finding by clear and convincing evidence, not a mere preponderance, which is the normal standard of proof at sentencing. Before *United States v. Booker*, 543 U.S. 220 (2005), we expressed some sympathy for the argument that a higher standard of proof should be required when a finding results in a considerable increase in a defendant's sentence. *See, e.g., United States v. Corbin*, 998 F.2d 1377, 1387 (7th Cir. 1993). But *Booker*, which made the guidelines advisory, extinguished any need for differing standards of proof. *United States v. Fisher*, 502 F.3d 293, 306 (3d Cir. 2007) (overruling *United States v. Kikumura*, 918 F.2d 1084 (3d Cir. 1990)); *United States v. Santiago*, 495 F.3d 820, 824 (7th Cir. 2007); *United States v. Reuter*, 463 F.3d 792, 793 (7th Cir. 2006). A district court judge who is justifiably reluctant to impose a sentence resting primarily on facts proven only by a preponderance of the evidence is now free to deviate from the guidelines. *Reuter*, 463 F.3d at 793.

To the extent that McGowan argues that his sentence is unreasonable because it is based on the normal civil standard of proof, his argument is unavailing. McGowan's sentence falls below the properly calculated guidelines range and is therefore presumed reasonable. *See United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110 (7th Cir. 2006); *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005) ("It is hard to conceive of

below-range sentences that would be unreasonably high.").  In reaching McGowan's sentence, the district court considered the variance between sentences for crack and cocaine convictions and the fact that McGowan dealt primarily powder cocaine.  This below-guidelines sentence is not unreasonable.

Accordingly, the judgment of the district court is **AFFIRMED**.